IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WARREN OLIVER,

     Plaintiff,

v.                        CASE NO. 5:15-cv-153-WTH-GRJ

SGT. GAFFORD, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 118, Defendants' Motion for Partial Summary Judgment.[1] Plaintiff has filed a response in opposition to Defendants' motion for summary judgment, ECF No. 129, and Defendants replied. (ECF No. 134.) The motion is, therefore, ripe for review. For the reasons explained below, the Court recommends that Defendants' motion for partial summary judgment be granted in part and denied in part. Defendants are entitled to summary judgment on all

_____

[1] Defendants Burdeshaw, Gafford, Jones, and Silcox ("Defendants") stated the following in their motion: "Because there is a clear dispute of fact with regard to whether or not there was a valid reason for the use of chemical agents, the Defendants . . . will not argue the propriety of the use of chemical agents under the Eighth Amendment."

Notably, Defendants May and Davis are not joined in this motion.

grounds addressed in their motion for partial summary judgment except for Plaintiff's claim that Defendants physically assaulted him.

## I. INTRODUCTION

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"), is proceeding *pro se* pursuant to 42 U.S.C. § 1983. (ECF No. 13 ("Compl.").) Plaintiff's claims against Defendants center around an incident that occurred at Northwest Florida Reception Center ("NWFRC") while Plaintiff was incarcerated there. (Compl.) Plaintiff argues that Defendants violated his Eighth Amendment rights by using chemical agents on him and assaulting him. (*Id.* at 11.) Further, Plaintiff alleges that there was an impartial investigation and hearing surrounding a false disciplinary report, in violation of his Fourteenth Amendment rights. (*Id.* at 11–12.) Plaintiff also alleges that his Eighth Amendment rights were violated when he was left in a cold cell without clothes and when his food trays were thrown into his cell. (*Id.* at 12.) Additionally, Plaintiff argues that Defendants retaliated against him by issuing a false disciplinary report and using excessive force on him.[2] (*Id.* at 11–12.)

---

[2] Plaintiff also alleged a deliberate indifference claim against Defendant Davis, which is not addressed in this Report and Recommendation.

Defendants Burdeshaw, Gafford, Jones, and Silcox ("Defendants") filed a motion for summary judgment, arguing that (1) no reasonable jury could find that Defendants physically assaulted Plaintiff, (2) Plaintiff cannot show that Defendants' acts were retaliatory, (3) Plaintiff has no claim against Defendants regarding his property, (4) Plaintiff cannot show a constitutional violation with regard to his food, (5) Defendants did not violate Plaintiff's rights due to unconstitutionally cold conditions, (6) Plaintiff cannot show due process violation with regard to his disciplinary report, and (7) Plaintiff is not entitled to compensatory or punitive damages due to a lack of physical injury. (ECF No. 118.)

In support of Defendants' motion, they submitted Plaintiff's FDOC information sheet (ECF No. 118-1); declaration of Defendant Silcox (ECF No. 118-2 ("Silcox Decl.")); declaration of Defendant Burdeshaw (ECF No. 118-3 ("Burdeshaw Decl.")); declaration of Defendant Gafford (ECF No. 118-4 ("Gafford Decl.")); declaration of Defendant Jones (ECF No. 118-5 ("Jones Decl.")); FDOC report of force form, medical records, and incident reports (ECF No. 118-6); FDOC disciplinary reports, investigative reports, and witness statements (ECF Nos. 118-7–118-8); excerpts of Plaintiff's July 19, 2016 deposition (ECF No. 118-9 ("Pl. First Depo.")); excerpts of

Plaintiff's September 8, 2016 deposition (ECF No. 118-10 ("Pl. Second Depo.")); FDOC health care record (ECF No. 118-11); FDOC special housing record (ECF No. 118-12); and use of force video footage (ECF No. 123).

Plaintiff subsequently filed his response in opposition to Defendant's motion for summary judgment. (ECF No. 129.) Plaintiff included the following exhibits with his response: his affidavit (ECF No. 129-1 at 3–5 ("Pl. Aff.")); affidavits of Willie Boddie (*Id.* at 6–8 ("Boddie Affs.")); affidavit of Jockue Hillman (*Id.* at 9 ("Hillman Aff.")); his general affidavit (*Id.* at 10 ("Pl. General Aff.")); affidavit of Jason Kroesen (*Id.* at 11 ("Kroesen Aff.")); affidavit of Robert Granata (*Id.* at 12–13 ("Granata Aff.")); another affidavit of Willie Boddie (*Id.* at 14–16); disciplinary report (*Id.* at 17–24); FDOC incident report (*Id.* at 24–25); disciplinary investigative report, witness statements, and evidence reports (*Id.* at 26–35); FDOC risk assessment for chemical agents (*Id.* at 36); FDOC optometric and other physical and mental health records (*Id.* at 37–64, 67–68); use of force reports (*Id.* at 65–66); inmate grievances and appeals (*Id.* at 69–76, 78–97); request for production of documents and responses to interrogatories and requests for admissions (*Id.* at 77, 98–109, 119–20); newspaper articles (*Id.* at

110–12); untitled documents regarding prison procedures (*Id.* at 113–17); and settlement offer (*Id.* at 118).[3]

## II. EVIDENCE

On January 28, 2014, while Plaintiff was incarcerated at NWFRC,[4] Plaintiff was in an altercation with several prison officials. (Compl. at 8.) Plaintiff's version of events—as asserted in the complaint, affidavits, and his depositions—differs from the version provided by Defendants. Both versions are discussed in turn below.

According to Plaintiff, Defendant Burdeshaw threatened to spray Plaintiff with chemical agents while he was in confinement. Later that day, Defendants Gafford and May told Plaintiff to stop yelling and kicking his cell door, although he was not doing either of those. Next, Defendants Burdeshaw, Jones, and May sprayed Plaintiff with chemical agents for no

---

[3] In Defendants' reply, they take issue with some of the attachments Plaintiff provided in support of his response to their motion for summary judgment. To start, they argue that the third affidavit by Boddie, ECF No. 129-1 at 14, should be stricken because it is irrelevant to Plaintiff's case regarding Defendants' alleged violation of his constitutional rights. (ECF No. 134 at 3.) Defendants also argue that affidavits from Kroesen and Granata, ECF No. 129-1 at 11–13, should be stricken because they are not relevant to this case and because they were signed prior to the date of the allegations. (ECF No. 134 at 4.) Defendants also argue that the newspaper articles Plaintiff attached, ECF No. 129-1 at 110–13, should be stricken as immaterial.

[4] Although Plaintiff was incarcerated at NWFRC at the time of the alleged incident, he is currently incarcerated at Tomoka C.I.

reason. Plaintiff states that Defendant Gafford told Plaintiff that they "get away with murder" and called Plaintiff a "nigger." Plaintiff also states that Defendant Gafford told Plaintiff he was part of the KKK. (Compl. at 8; ECF No. 129 at 1–2; Pl. Second Depo. at 37–45; Pl. Aff.; Boddie Affs.; Hillman Aff.)

Plaintiff says that Defendants Gafford, May, and Jones used excessive force on him again when they punched him and kicked him in the testicles.[5] Plaintiff also says that Defendants Gafford and May threw his food trays inside his cell[6] and that Defendants Gafford, Jones, May, and Burdeshaw made Plaintiff sit in a cold cell without any clothes and threw

---

[5] In Plaintiff's depositions and in his affidavit, he alleges that there was also excessive force used on him on January 23, 2014—specifically he alleges that he was kneed/kicked in the testicles, punched, and choked. (Pl. First Depo. at 72–75; Pl. Second Depo. at 25–28, 129; Pl. Aff.) Willie Boddie's affidavit supports the allegation that Plaintiff was kicked in the testicles by Defendant Gafford while Defendant Jones and another officer watched. (Boddie Affs.) In Plaintiff's second deposition and his affidavit, he also mentions a separate assault by Defendant May during which Defendant May choked Plaintiff and hurt his thumb. (Pl. Second Depo. at 129; Pl. Aff.)
In his Complaint, Plaintiff only mentions a physical assault that occurred on January 28, 2014. (Compl.) His Complaint states only that "Sgt. Gafford, Office May and Sgt. Jones punch me and kick me in my testicals [sic]. This occurred on 1-28-14." (Compl. at 8, 11.)

[6] Although Plaintiff only alleges in his Complaint that this happened on January 28, 2014, Plaintiff stated in his second deposition that this happened on multiple occasions. He also said that sometimes they would throw empty trays into his cell. Other times they would not give him any tray at all. Plaintiff, however, could not provide the number of times this happened, only stating that it happened "a lot." (Pl. Second Depo. at 109–11.)

away his property. According to Plaintiff, and allegedly overheard by other inmates, Defendant Silcox told his subordinates to use excessive force on Plaintiff in retaliation so that Plaintiff would drop a lawsuit against Defendant Silcox's brother. (Compl. at 8–9; ECF No. 129 at 1–2, 4, 6–7; Pl. First Depo. at 66–67, 72–75, 109–10; Pl. Second Depo. at 25–28, 51–52, 56–57, 117–18, 129; Pl. Aff.; Boddie Affs.; Hillman Aff.)

Plaintiff also claims that a false disciplinary report was written against him that same day. Plaintiff says that his witnesses were not provided with witness statement forms and that there was not an impartial investigation regarding the disciplinary report. Plaintiff alleges that he was found guilty based solely on an officer's statement and that Defendants Gafford and May prevented him from attending the disciplinary hearing. (Compl. at 9; ECF No. 129 at 1–2, 8; Pl. Aff.; Boddie Sworn Affs.)

Additionally, Plaintiff asserts that he told medical that he was assaulted. Plaintiff says that although he was seen by Nurse Davis, he did not receive any treatment for his injuries. According to Plaintiff, his injuries include physical and mental pain, including eye pain, worsened asthma, nightmares, and anxiety attacks. Plaintiff also declared a psychological emergency following the incident.  (Compl. at 9; ECF No. 129 at 5, 10–11;

Pl. Depo. at 98–100; Pl. Second Depo. at 79–83, 96–107; Pl. Aff.)

Defendants, of course, tell a different story. According to Defendants, Plaintiff was being disruptive, cursing at staff members and kicking his cell door. The officers attempted to talk to Plaintiff so that he would cease his disruptive behavior. Because Plaintiff was ignoring orders to stop acting disorderly, Defendant Burdeshaw contacted Nurse Lucas because of Plaintiff's medical condition that could be exacerbated by the use of chemical agents. Nurse Lucas requested to be present during the administration of chemical agents, and the Assistant Warden authorized the use of the chemical agents. (ECF No. 118 at 3; Burdeshaw Decl.; Gafford Decl.)

Although Plaintiff stopped his disruptive behavior after receiving a warning, he then continued his disruptive conduct about an hour later. After Defendant Burdeshaw warned Plaintiff again to stop and requested Nurse Lucas to be present, Defendant Jones sprayed chemical agents on Plaintiff through his cell door and then again when Plaintiff's disruptive behavior continued. Plaintiff was then restrained, given a shower, and provided with clean boxers. Then, Plaintiff was evaluated by medical staff, and no injuries were noted. (ECF No. 118 at 3; Burdeshaw Decl.; Gafford Decl.; Jones

Decl.; ECF No. 118-6 at 4–5; ECF No. 123.)

As a result of this incident, Plaintiff was issued a disciplinary report for Creating or Participating in a Minor Disturbance. He was found guilty and received thirty days in disciplinary confinement. Plaintiff also received a disciplinary report for Misuse of State Property because he attempted to use his state-issued sheet to block the chemical agents. For this, he received fifteen days in disciplinary confinement. Regarding his disciplinary hearing, Plaintiff waived his right to be present and voluntarily refused to provide a statement. Additionally, the investigating officer attempted to obtain witness statements from those witnesses Plaintiff listed. Plaintiff's property was also taken due to Plaintiff's disciplinary report and psychological emergency, in accordance with FDOC rules. (ECF No. 118 at 3–4: ECF No. 134 at 2–3; Gafford Decl.; Jones Decl.; ECF No. 118-7; ECF No. 118-8; Pl. Second Depo. at 131–37.)

## III.  SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must

examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The Court must view the evidence and inferences drawn from the underlying facts in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (stating that to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff"). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable

doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

## IV. DISCUSSION

Plaintiff alleges that Defendants violated his First, Eighth, and Fourteenth Amendment rights when they physically assaulted Plaintiff and used chemical agents on him on January 28, 2014, in retaliation for a lawsuit Plaintiff brought against Defendant Silcox's brother, and then filed a false disciplinary report against Plaintiff. (Compl.) Plaintiff also raises claims regarding his prison conditions, including exposure to cold temperatures and issues regarding delivery of food. (*Id.*) Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims against Defendants except for Plaintiff's claims that Defendants' use of chemical agents on Plaintiff violated the Eighth Amendment. (ECF No. 118.) Defendants further argue that because Plaintiff has failed to prove that he suffered more than *de minimis* injuries as a result of Defendants' conduct, Plaintiff is only entitled to a claim for nominal damages. (*Id.*)

### A. Defendants are not entitled to summary judgment with regard to Plaintiff's allegations that Defendants physically assaulted him.

Defendants argue that they are entitled to summary judgment regarding Plaintiff's allegations of physical assault because no reasonable

jury could find for Plaintiff since he has only a "scintilla" of evidence of an assault. (ECF No. 118 at 4–5.) The Court disagrees because there is a genuine dispute of material fact with regard to whether Defendants physically assaulted Plaintiff.

In Plaintiff's Complaint, he alleges that Defendants Gafford, May, and Jones punched him and kicked him in the testicles on January 28, 2014. (Compl. at 8, 11.) Then, in Plaintiff's depositions and in his sworn affidavit, Plaintiff stated that Defendants Gafford and Jones physically assaulted him on January 23, 2014, kneeing or kicking Plaintiff in the testicles, punching him, and grabbing him by the shoulders. (Pl. First Depo. at 72–75; Pl. Second Depo. at 25-28, 129; Pl. Aff.)

Plaintiff further provided the affidavit of Boddie in support of his claims of physical assault. Inmate Boddie avers in the affidavit that he saw Defendant Gafford kick Plaintiff in the testicles while Defendant Jones and other officers were around. (Boddie Affs.) As a result of the assault, Plaintiff states that he suffered from swollen testicles and pain, which he was still experiencing in December 2016. (Pl. Second Depo. at 104; Pl. Aff.)

Defendants argue that Plaintiff's accounts of physical assault in his

Complaint, earlier versions of his complaint, and depositions are inconsistent. (ECF No. 118 at 6–7.) Defendants also argue that Plaintiff's allegations are not corroborated by anything other than his own statements. (*Id.*) Unlike Plaintiff's allegations, Defendants state that their motion for summary judgment regarding Plaintiff's claims of physical assault is well supported because they have provided sworn declarations of Defendants stating that no physical assault occurred and because they have provided medical records that do not show any signs of injury resulting from a physical assault. (*Id.* at 8; Burdeshaw Decl.; Gafford Decl.; Jones Decl.; ECF No. 118-6; ECF No. 118-11.)

A lack of medical evidence revealing injuries resulting from the alleged physical assault does not necessarily mean that no physical assault took place. Likewise, confusion about dates or allegations that Defendants physically assaulted Plaintiff on multiple occasions does not disprove that any such assault occurred. Because both Plaintiff and Defendants have provided sworn affidavits, declarations, or testimony supporting their version of events, the Court finds that a genuine dispute of material fact regarding whether Defendants physically assaulted Plaintiff. This is an issue of credibility, which should be resolved by a jury and not

the Court on a record with competing declarations. Defendants are, therefore, not entitled to summary judgment on Plaintiff's claims of physical assault.

> **B.** **Defendants are entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff has provided nothing other than conclusory allegations in support of his claim.**

Defendants also argue that they are entitled to summary judgment regarding Plaintiff's claims of retaliation for the lawsuit he filed against Defendant Silcox's brother because Plaintiff has no evidence of a causal connection between his lawsuit and the actions of Defendants. (ECF No. 118 at 8–10.) The Court agrees that Plaintiff cannot show a causal connection between the lawsuit he filed against Defendant Silcox's brother and the conduct of Defendants.

The Eleventh Circuit has established a three-part test to determine whether a Plaintiff has an actionable First Amendment claim. The Plaintiff must establish each of the three elements:

> (1) his speech was constitutionally protected;
>
> (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and
>
> (3) there is a causal relationship between the retaliatory action

and the protected speech.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); *see also Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008).

For the first element, it "is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Mosley,* 532 F.3d at 1276. "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints." *Id*.

The second element of the three-part test does not require that the Plaintiff himself was actually deterred from engaging in such speech, but that "a person of ordinary firmness" would be deterred from engaging in the protected speech. *Id.* To demonstrate whether the conduct would have deterred a person of ordinary firmness, Plaintiff must show more than a "de minimis inconvenience" to the exercise of his First Amendment rights. *Bennett*, 423 F.3d at 1252 (noting that it "would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how likely to deter a person of ordinary

firmness from that exercise" (quoting *Bart v. Telford*, 677 F.2d 622, 625

(7th Cir. 1982)).

Finally, the third element asks whether the alleged retaliatory conduct

would not have occurred but for the alleged retaliatory motive. *Hartman v.*

*Moore*, 547 U.S. 250, 260 (2006). Conclusory allegations of retaliation are

insufficient. *See Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995)

("Appellant also produced nothing, beyond his own conclusory allegations,

suggesting that [the defendant's] actions . . . were motivated by a

retaliatory animus. In the absence of such evidence, summary judgment

was appropriate."). Accordingly, summary judgment is appropriate when

there is no evidence of a causal connection between the allegedly

retaliatory motive and the allegedly unconstitutional conduct. *Harris*, 65

F.3d at 918.

A plaintiff bears the burden of proof on all three elements, and

Plaintiff has failed to do so here. Applying this three-part *Bennett* test to

Plaintiff's claims, it is clear that Plaintiff cannot establish a causal

connection between any allegedly retaliatory motive and Defendants'

conduct regarding the use of excessive force.

Although Plaintiff alleges that Defendants retaliated against him by

using excessive force on him because of a lawsuit he filed against

Defendant Silcox's brother, Plaintiff has offered nothing other than

conclusory allegations of retaliation. Specifically, Plaintiff alleged in his

Complaint that he and other inmates heard that "Colonel Silcox told his

subordinates to use excessive force on me on 1-28-14 to drop a lawsuit I

have on his brother." (Compl. at 9.) As support for this allegation, Plaintiff

offers his own affidavit and an affidavit of Willie Boddie. (Pl. Aff.; Boddie

Affs.) Boddie's affidavit, however, offers only a conclusory allegation of

retaliation as well, stating that Plaintiff "was intentionally . . . gassed . . . out

of retaliation for filing a civil 1983 right complaint against officers." (Boddie

Affs.) His affidavit does not mention anything about Defendant Silcox or his

brother, nor does Boddie state how he knew Defendants' actions were in

retaliation. Additionally, although Plaintiff alleges in his depositions that

Defendant Silcox talked to Plaintiff about the lawsuit, Plaintiff fails to

provide any actual evidence that the other officers knew about the lawsuit

and thus acted in retaliation. (*See* Pl. First Depo. at 66–70; Pl. Second

Depo. at 50–51.)

Defendants, on the other hand, provided sworn declarations to the

contrary. These declarations state that neither Defendant Silcox nor any of

the officers involved in the incident knew about the lawsuit Plaintiff

allegedly filed against Defendant Silcox's brother. (Silcox Decl.; Burdeshaw

Decl.; Gafford Decl.; Jones Decl.)

Thus, even if Defendant Silcox knew about the lawsuit against his

brother, as Plaintiff alleges, there is no evidence that the other officers

knew about it aside from assumptions and conclusory allegations. Because

conclusory allegations are insufficient to support a motion for summary

judgment, Plaintiff has failed to establish the causal connection between

the allegedly retaliatory motive and the conduct of the officers. Accordingly,

Defendants are entitled to summary judgment on Plaintiff's claims of

retaliation. *See Harris*, 65 F.3d at 916–18.

## C. Defendants are entitled to summary judgment on Plaintiff's property deprivation allegations because there are adequate state remedies to address such claims.

Defendants also assert that they are entitled to summary judgment

regarding Plaintiff's property deprivation allegations. (ECF No. 118 at

10–11.) The Court agrees because Plaintiff has no due process claim

where adequate state remedies exist to address Plaintiff's deprivation of

property.

Although Plaintiff argues that Defendants either threw away or

destroyed his property, this does not rise to the level of a constitutional violation. The Supreme Court has held that even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). It follows that any negligent deprivation of property would also not rise to the level of a constitutional violation under § 1983. *Daniels v. Williams*, 474 U.S. 327, 330, 333 (1986). Even if Plaintiff's allegation is true regarding Defendants throwing away his property—although he offers no evidence to support his claim—Plaintiff has provided nothing that would prove such an act was authorized. Thus, if a state postdeprivation remedy is available, there has been no constitutional violation.

For a prisoner in Florida, there are state postdeprivation remedies available for deprivation of property. First, the FDOC has an inmate grievance procedure for challenging a deprivation of property and second under Florida State § 768.28,[7] there is a state tort remedy for deprivation of

---

[7] This statute allows prisoners to bring a tort claim in state court to receive damages for the loss of property. *See Everidge v. Cannon*, No. 3:10cv466/MCR/CJK, 2011 WL 5836029, at *2 (N.D. Fla. Nov. 1, 2011).

property. *See Logan v. Neel*, No. 3:11-cv-646-J-12TEM, 2011 WL

2784577, at *3 (M.D. Fla. July 14, 2011) ("The State of Florida has

provided an adequate post-deprivation remedy for the seizure of Plaintiff's

property; thus, there is no constitutional violation." (citing *Case v. Eslinger*,

555 F.3d 1317, 1331 (11th Cir. 2009)). Because any alleged deprivation of

property would have been unauthorized, even if intentionally done by

Defendants, and because postdeprivation remedies exist, Plaintiff has

failed to prove a constitutional violation. Accordingly, Defendants are

entitled to summary judgment on Plaintiff's claims for deprivation of

property.

**D.      Defendants are entitled to summary judgment regarding
        Plaintiff's complaints about Defendants throwing his food
        trays into his cell because he has failed to prove that such
        treatment or alleged deprivation of food was sufficiently
        serious to violate the Eighth Amendment.**

Defendants next argue that they are entitled to summary judgment

with regard to Plaintiff's allegations that Defendants threw his food trays

into his cell on January 28, 2014. (ECF No. 118 at 11–18). The Court

agrees because Plaintiff has failed to provide evidence of a sufficiently

serious prison condition that would rise to a constitutional violation.

Plaintiff alleges that Defendants threw food trays into his cell on

January 28, 2014, with food on them. (Compl. at 8, 12.) In his Complaint,

although he states that it has happened to other inmates, Plaintiff fails to

allege that this happened on multiple occasions or that he was ever

completely deprived of food. During his depositions, however, Plaintiff

introduced allegations that his food would land on the floor, that sometimes

the trays were empty, and that sometimes he did not receive any food at

all. (Pl. First Depo. at 75; Pl. Second Depo. at 108–11.) Plaintiff could not

state the number of times this happened, and he conceded that sometimes

he received food in the normal way. (Pl. Second Depo. at 108–11.). To

support his claim that he was denied food, Plaintiff alleged that he lost

weight as a result of Defendants' actions.[8] (Pl. Second Depo. at 111.)

Plaintiff's allegations represent a challenge to his prison conditions.

Notably, "the Constitution does not mandate comfortable prisons." *Rhodes*

*v. Chapman*, 452 U.S. 337, 349 (1981). Prison conditions only violate the

Eighth Amendment when they "involve the wanton and unnecessary

infliction of pain" or are "grossly disproportionate to the severity of the

crime warranting imprisonment." *Id.* at 347. The Supreme Court has

---

[8] Plaintiff also included the affidavit of Hillman. This affidavit, however, merely stated that Hillman heard empty trays being throw into Plaintiff's cell. It does not state how Hillman knew the trays were empty or how often this happened. (*See* Hillman Aff.)

established a two-prong test of determining whether prison conditions violate the Eighth Amendment. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

First, the prisoner must show that the prison condition is so serious that it violates the Eighth Amendment—it must be "extreme." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). The condition must "pose an unreasonable risk of serious damage to [the prisoner's] future health [or safety]." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 35 (1993)). In *Helling*, the Supreme Court stated that

> the Eighth Amendment requires more than a scientific and statistically inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the condition]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

509 U.S. at 36. Thus, the Eighth Amendment protects prisoners from being "deprive[d] . . . of the minimal civilized measure of life's necessities." *Chandler*, 379 F.3d at 1289 (quoting *Rhodes*, 452 U.S. at 347).

Second, the prison officials must have "acted with a sufficiently culpable state of mind" regarding the challenged condition; in other words,

they must have acted with deliberate indifference. *Id.* (quoting *Hudson*, 503

U.S. at 8 (quotation marks and citation omitted)). The prison official must

"know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff has failed to prove that Defendants violated the Eighth

Amendment under the first *Chandler* prong with regard to Plaintiff's food

delivery, or any alleged food deprivation. "[P]rison officials must ensure that

inmates receive adequate food, clothing, shelter, and medical care."

*Farmer*, 511 U.S. at 832. However, "a prisoner only is entitled to

reasonably adequate food." *Hernandez v. Fla. Dep't of Corr.*, 381 F. App'x

862, 865 (11th Cir. 2008).

While prisoners must receive adequate food, the "[w]ithholding of

food does not *per se* constitute an objectively serious deprivation in

violation of the Constitution." *Adair v. Okaloosa Cty. Jail*, No.

3:07cv425/MCR/EMT, 2008 WL 564616, at *2 (N.D. Fla. Feb. 27, 2008)

(citing *Reed v. McBride*, 178 F,3d 849m 853 (7th Cir. 1999)). Receiving "a

minimal amount of food for a limited number of days" is not an Eighth

Amendment violation. *Hernandez*, 281 F. App'x at 865. Both the severity and duration of the deprivation are important considerations in determining whether an Eighth Amendment violation has occurred. *Adair*, 2008 WL 564616, at *2. A court may also consider the adverse physical effects suffered by the prisoner. *Id.* at *3.

To start, Plaintiff's Complaint alleges that food trays with food on them were thrown into his cell, not that he was deprived of food. (Compl. at 8, 12.) His Complaint also states that this happened on January 28, 2014, not that this happened frequently, or even multiple times. (*Id.*) The fact that his food was delivered in a way that was displeasing to Plaintiff does not rise to the level of an Eighth Amendment violation.

Even assuming there were other occasions in which he was deprived of food, as Plaintiff alleged in his second deposition, Plaintiff still fails to prove that his Eighth Amendment rights were violated. Plaintiff failed to provide details about the number of times he was denied food. (Pl. Second Depo. at 108–11.) Additionally, Plaintiff stated that Defendant Gafford did not work every day, did not serve all of Plaintiff's meals when he did work, and would sometimes provide Plaintiff his food in a normal manner. (*Id.*)

Further, the evidence contradicts Plaintiff's allegations that he was deprived food. Defendant Gafford denies these allegations, (Gafford Decl.)

and the record refutes them. Most notably, the records shows that Plaintiff received all of his meals on January 28, 2014. (ECF No. 118-12.) Additionally, aside from two meals he refused the following day, the records show that he received all the meals provided for him while he was incarcerated at NWFRC. (*Id.*)

Additionally, Plaintiff failed to prove that he suffered any physical harm as a result of his alleged deprivation. Although Plaintiff stated in his deposition that he lost weight, the available prison records indicate that no such weight loss occurred. (*Id.*) Instead, Plaintiff's weight fluctuated but not seriously.[9] (*Id.*) Accordingly, Plaintiff has failed to show that he suffered from any "deprivation that posed an unreasonable risk of serious damage to his health." *Hernandez*, 281 F. App'x at 866.

Plaintiff has failed to prove that there was a sufficiently serious deprivation of food so as to rise to the level of an Eighth Amendment violation. Therefore, Defendants are entitled to summary judgment with regard to this claim.

---

[9] The records included range from September 30, 2013, to April 4, 2014. Plaintiff's weight fluctuated between approximately 160 to 170 pounds. There are, however, entries that state that Plaintiff weighed around 120 pounds. Based on a review of the records in their entirety, however, it is clear that these entries must have been made in error because the entries surrounding them note that Plaintiff's weight was around 160 pounds. (ECF No. 118-12.)

**E.    Defendants are also entitled to summary judgment with regard to Plaintiff's claims regarding his exposure to cold temperatures because Plaintiff has failed to prove that the prison condition was sufficiently serious to violate the Eighth Amendment.**

Defendants next argue that they are entitled to summary judgment with regard to Plaintiff's allegations that he was subjected to unconstitutionally cold conditions. (ECF No. 118 at 19–23). The Court agrees because Plaintiff has failed to provide evidence that any exposure to cold temperatures rose to the level of an Eighth Amendment violation.

Plaintiff alleges that he was left in his cell without clothes or heat when the weather was 20 degrees outside on January 28, 2014. (Compl. at 9.) Plaintiff, however, later alleges in his deposition that he was wearing a privacy shroud and boxers because his other clothes and blanket were removed after the use of chemical agents and after Plaintiff declared a psychological emergency.[10] (Pl. Second Depo. at 114–21.) Plaintiff does not state how long he was without additional clothing. (Pl. Second Depo. at 121.) He also does not provide any evidence of the actual temperature outside other than a statement from an unnamed officer, which is not appropriate evidence for a motion for summary judgment. (*Id.* at 120–21.)

---

[10] Plaintiff's blanket was removed because he was charged in a disciplinary report with misuse of state property. Additionally, Plaintiff did not have clothes because he declared a psychological emergency. (Pl. Second Depo. at 114–21.)

Plaintiff also does not allege any injuries resulting from his exposure to the cold temperatures.

Using the two-prong *Chandler* test discussed above regarding Plaintiff's allegations of food deprivation, Plaintiff again fails to satisfy the first prong of alleging a condition that was sufficiently extreme to rise to the level of an Eighth Amendment violation. *See Chandler*, 379 F.3d at 1289. While it is true "that the right of a prisoner not to be confined in a cell at so low a temperature as to cause severe discomfort . . . was well established," *Chandler v. Baird*, 926 F.2d 1057, 1065–66 (11th Cir. 1991), Plaintiff has failed to allege facts sufficient to show that he was exposed to such low temperatures so as to cause severe discomfort. Even assuming that it was 20 degrees outside—which Plaintiff has provided no evidence of apart from something he heard an unknown officer say—Plaintiff has failed to prove that inside of his cell he was without heat for any period of time. Because Plaintiff has not provided evidence that he was actually exposed to 20 degree temperatures without clothing or blankets in his cell, Plaintiff has failed to prove an Eighth Amendment violation.

Again, "the Constitution does not mandate comfortable prisons." *Rhodes*, 425 U.S. at 349. Because Plaintiff has failed to prove a sufficiently extreme prison condition that was dangerous to his health, Defendants are

entitled to summary judgment on this claim.

**F.    Defendants are entitled to summary judgment regarding Plaintiff's due process claims surrounding his allegedly false disciplinary report because Plaintiff, a life-sentenced inmate, had no liberty interest requiring due process protections.**

Defendants also argue that they are entitled to summary judgment regarding Plaintiff's allegations that his due process rights were violated when he was issued and found guilty of a false disciplinary report. (ECF No. 118 at 23–26.) Defendants assert that Plaintiff lacks the requisite liberty interest to invoke due process protections, particularly because he is a life-sentenced inmate. (*Id.* at 23.) The Court agrees because the limited due process requirements afforded to some prisoners do not apply to Plaintiff as a life-sentenced inmate who did not lose gain time and was not subjected to atypical confinement.

Plaintiff states that he was issued a false disciplinary report on January 28, 2014. (Compl. at 9.) Plaintiff says that there was not a proper investigation following the issuance of this disciplinary report and that he was found guilty based solely on the officer's statement. (*Id.*) Further, Plaintiff alleges that he was prevented from attending his hearing. (*Id.*) Plaintiff concludes that these actions violated his Fourteenth Amendment rights. (*Id.* at 11–12.)

In the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citation omitted). For prisoners, due process is required for a liberty deprivation (1) "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court," and (2) "when the state has consistently bestowed a certain benefit to prisoners . . . and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Kirby v. Siegelman*, 195 F.3d 1285, 1290–91 (11th Cir. 1999) (citation omitted).

While prisoners do have due process rights in disciplinary hearings, *see Wolff v. McDonnell*, 418 U.S. 539, 560–65 (1974), the prisoner must have a liberty interest. "Without either the loss of gain-time credits or 'atypical' confinement, the Due Process Clause itself affords no protected liberty interest that invokes procedural protections." *Walker v. Fla. Dep't of Corr.*, No. 5:15cv25/MW/EMT, 2016 WL 1426011, at *3 (N.D. Fla. Mar. 18, 2016) (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)).

Plaintiff—a life-sentenced inmate who received 45 days in

disciplinary confinement—has no such liberty interest. Plaintiff is ineligible for gain time because he is a life-sentenced inmate. *See, Walker*, 2016 WL 1426011, at *2 (noting that prisoners serving life sentences are ineligible to earn gain time).

Plaintiff also fails to allege that his conditions in disciplinary confinement were significantly more restrictive than elsewhere in the prison or that disciplinary confinement was an "atypical or significant hardship." *See O'Bryant v. Wilson*, No. 1:10cv76-MP-G, 2012 WL 3264187, at *3 (N.D. Fla. Aug. 10, 2012) (finding that a life-sentenced inmate did not have a liberty interest at stake regarding his disciplinary confinement and stating that "[c]ourts have routinely held that prisoners have no liberty interest in remaining in general population versus more restrictive confinement." (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983))); *Sandin* , 515 U.S. at 486 (finding that 30 days of "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State may conceivably create a liberty interest").

Because Plaintiff was not deprived of a liberty interest when he received 45 days of disciplinary confinement without losing any gain time, there is no need to address whether he received adequate process surrounding his disciplinary hearing. Accordingly, Defendants are entitled

to summary judgment regarding Plaintiff's due process claim.

## G. Because Plaintiff failed to prove that he suffered more than *de minimis* injuries as a result of Defendants' conduct, Plaintiff is not entitled to claims of compensatory or punitive damages.

Defendants argue that Plaintiff is not entitled to the compensatory or punitive damages because he has failed to demonstrate the requisite injury under 42 U.S.C. § 1997e(e). (ECF No. 118 at 27–36.) The Court agrees because Plaintiff failed to provide evidence that he suffered more than *de minimis* injury as a result of Defendants' conduct.

Because Plaintiff has not shown that he suffered more than a *de minimis* physical injury, Plaintiff is not entitled to compensatory or punitive damages based on the limitation on recovery provided in the Prison Litigation Reform Act ("PLRA"). Under the PLRA, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). According to the Eleventh Circuit, the PLRA precludes claims for punitive and compensatory damages absent a showing of physical injury. *Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011) (citing *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007)). Because Plaintiff seeks both compensatory and punitive damages, the relevant inquiry is whether Plaintiff has shown a physical

injury.

The Court concludes that Plaintiff has failed to show the requisite physical injury for a claim for punitive or compensatory damages. "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." *Mann v. McNeil*, 360 F. App'x 31, 31 (11th Cir. 2010) (quoting *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312–13 (11th Cir. 2002)). Although the injuries must be greater than *de minimis*, the physical injuries need not be significant. *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *op. reinstated in part on rehearing*, 216 F.3d 970 (2000).

According to Plaintiff's Complaint, he still suffers from physical and mental pain as a result of Defendants' use of excessive force. (Compl. at 10.) With regard to Plaintiff's physical injuries, he states that his eyes still hurt and that his asthma has gotten worse. (*Id.*) Notably, Plaintiff does not complain of any additional physical injuries nor does he state that he received any treatment for these injuries in his Complaint. Then, in his response to Defendants' motion for summary judgment, Plaintiff states that the chemical agents also burned his skin, that he was on breathing

treatments for his asthma, and that he had to get new glasses as a result. (ECF No. 129 at 5, 10.)

With regard to Plaintiff's alleged injuries as a result of Defendants' use of chemical agents, Plaintiff has failed to prove that his physical injuries were more than *de minimis*. Plaintiff was evaluated following his decontamination shower, and the nurse noted that there were no injuries beyond what was normal for the effects of chemical agents and his lungs sounded clear. (ECF No. 118-6.) In addition to the medical records, the use of force video does not show Plaintiff in any distress following the use of chemical agents; instead, it only shows Plaintiff coughing occasionally. (ECF No. 123.)

Plaintiff's conclusory allegations that he continues to suffer from the effects of the chemical agents are insufficient to establish that his injuries resulting from the use of chemical agents were more than *de minimis*. While he states that his eyes are still hurting and that both his vision and asthma have gotten worse, Plaintiff has provided no evidence to show a causal connection between his worsening eye sight and asthma and the use of chemical agents. Plaintiff's asthma preceded the use of chemical agents, and the fact that Plaintiff provides medical records suggesting that he underwent breathing treatments months later does not show that the

chemical agents caused Plaintiff's breathing issues. (ECF No. 129-1 at 4–41, 68.)

The same is true regarding Plaintiff's claims of eye injuries. Although in Plaintiff's Complaint he alleges that his eyes are still hurting him, Plaintiff provided no medical records regarding eye pain. Then, in his response to Defendants' motion for summary judgment, he complains of worsening vision and includes medical records regarding new glasses but again fails to connect his worsening vision to the use of chemical agents. (ECF No. 129-1 at 38–39.) Thus, while Plaintiff may be able to prove that his eyesight has deteriorated, Plaintiff has failed to prove that any deterioration in his eyesight was the result of Defendants' use of chemical agents.

The fact that Plaintiff suffered the effects of chemical agents does not necessarily mean that his injuries were more than *de minimis*, particularly where Plaintiff failed to prove that he had any lasting injuries as a result of the chemical agents.[11] *See, e.g., Robinson v. Tifft*, No. 3:11cv560/LAC/CJK, 2012 WL 2675467 (N.D. Fla. June 1, 2012) (burning eyes and temporary blindness from chemical agents did not constitute

---

[11] In Plaintiff's second deposition, he stated that his skin was burning for about two hours and that he had difficulty breathing for 20–30 minutes. His injuries were typical of those resulting from the use of chemical agents. He also stated, however, that he was still feeling the effects of the chemical agents. (Pl. Second Depo. at 96–97, 106.) Yet his medical records do not show any consistent complaints regarding his alleged injuries during his visits with medical or mental health following the incident.

more than *de minimis* injury); *Kornagay v. Burt*, No. 3:09cv281/LAC/EMT, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011) (burning skin, choking, and difficulty breathing not more than *de minimis* injury).

Because the medical records at the time of the incident fail to show that Plaintiff suffered anything more than *de minimis* injury as a result of the use of chemical agents, Plaintiff's conclusory allegations to the contrary are insufficient. *See Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)). Thus, Plaintiff has failed to prove that he suffered sufficient physical injury to entitle him to a claim for compensatory and punitive damages regarding Defendants' use of chemical agents.

Plaintiff has also failed to prove that he suffered more than *de minimis* injuries resulting from Defendants' alleged physical assault. In Plaintiff's Complaint, although he states that Defendants punched him and kicked him in the testicles, he does not allege that he suffered any physical injuries as a result of this conduct. (*See* Compl. at 8.) Further, he does not mention any physical injuries resulting from this conduct in his response to Defendants' motion for summary judgment. (*See* ECF No. 129.) It is not

until Plaintiff's second deposition that he first mentioned that his testicles were swollen and that he is still suffering from this alleged assault. (Pl. Second Depo. at 104–05.)

Even if Plaintiff had alleged this physical injury in his Complaint, Plaintiff's medical records do not support this allegation. His medical records reveal that Plaintiff only stated that he had testicle pain when he visited medical in May 2014, despite the fact that he was seen by medical multiple times prior to this date, including on the date of the alleged incident. (ECF No. 129-1 at 39, 59; ECF No. 118-11.) Yet Plaintiff's complaint to medical on May 30, 2014, was that staff grabbed Plaintiff in the testicles, which Plaintiff does not allege in his Complaint. (ECF No. 118-11.) Further, Plaintiff's medical records state that Plaintiff's testicles were not swollen. (*Id.*) Therefore, not only did Plaintiff's fail to prove any physical injury as a result of the alleged assault, but he also failed to produce any evidence that he complained to medical about any pain in his testicles associated with conduct by Defendants as alleged in his Complaint.

In short, because Plaintiff's injuries consist of those that are common effects from the use of chemical agents and nothing more that Plaintiff was able to prove was the result of Defendants' conduct, Plaintiff's injuries fail

to constitute more than *de minimis* injuries under the PLRA. He is,

therefore, precluded under the PLRA from bringing claims for punitive and

compensatory damages. Accordingly, Defendants are entitled to summary

judgment on Plaintiff's claims for punitive and compensatory damages.

Plaintiff, of course, may proceed on his claim for nominal damages if he is

able to establish that his constitutional rights were violated.

## V. CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant's Motion for Partial Summary Judgment, ECF No. 118,
should be **GRANTED in part and DENIED in part.**[12] Defendants
Burdeshaw, Gafford, Jones, and Silcox's motion for summary
judgment on Plaintiff's claims of physical assault is due to be
**DENIED**. Defendants' motion for summary judgment with regard to
all other claims against them addressed in their motion for partial
summary judgment is due to be **GRANTED**. Further, Plaintiff should
not be permitted to recover compensatory and punitive damages but
should be permitted to recover nominal damages if he succeeds on
any of his claims that his constitutional rights were violated.

**IN CHAMBERS** this 1st day of May 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

[12] Plaintiff's claims regarding Defendants' use of chemical agents on January 28, 2014, and Plaintiff's claims against Defendants Davis and May are not addressed in Defendants' motion for summary judgment and therefore may proceed.

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**