IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WARREN OLIVER,

     Plaintiff,

v.                                CASE NO. 5:15-cv-153-WTH-GRJ

SGT. GAFFORD, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on ECF No. 178, Defendant May's

Motion for Partial Summary Judgment.[1] Plaintiff has filed a response in

opposition to the motion for summary judgment, ECF No. 209, and

Defendant May replied. (ECF No. 213.) The motion is, therefore, ripe for

review. For the reasons explained below, the Court recommends that

Defendant May's motion for partial summary judgment be granted.

---

[1] Defendant ("Officer May") argued the following in his motion: "Because there is a clear dispute of fact with regard to whether or not there was a valid reason for the use of chemical agents, the Defendants . . . will not argue the propriety of the use of chemical agents under the Eighth Amendment." (ECF No. 178 at 1.) Additionally, Officer May does not challenge Plaintiff's Eighth Amendment claim regarding the physical assault.

# I.  INTRODUCTION

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"), is proceeding *pro se* under 42 U.S.C. § 1983. (ECF No. 13 ("Compl.").) Plaintiff's claims against Defendant May ("Officer May") and the other Defendants center around an incident that occurred at Northwest Florida Reception Center ("NWFRC") while Plaintiff was incarcerated there. (Compl.) Plaintiff argues that Officer May and the other Defendants violated his Eighth Amendment rights by using chemical agents on him and assaulting him. (*Id.* at 11.) Further, Plaintiff alleges that there was an impartial investigation and hearing surrounding a false disciplinary report, in violation of his Fourteenth Amendment rights. (*Id.* at 11–12.) Plaintiff also alleges that his constitutional rights were violated when he was left in a cold cell without clothes, when his food trays were thrown into his cell, and when his property was destroyed. (*Id.* at 12.) Additionally, Plaintiff argues that Officer May and the other Defendants retaliated against him by issuing a false disciplinary report and using excessive force on him.[2] (*Id.* at 11–12.)

---

[2] Plaintiff also alleged a deliberate indifference claim against Defendant Davis, which is not addressed in this Report and Recommendation.

Officer May filed a motion for partial summary judgment, arguing that he is entitled to summary judgment on Plaintiff's constitutional claims that (1) Officer May's actions were retaliatory, (2) Officer May threw away or destroyed his property, (3) Officer May threw food trays at him or deprived him of food, (4) Officer May subjected him to unconstitutionally cold conditions, and (5) Officer May violated his due process rights regarding the issuance of a disciplinary report. Officer May also argues that Plaintiff is not entitled to recover compensatory or punitive damages based on his lack of physical injury. (ECF No. 178.)

In support of Officer May's motion, he submitted his own declaration. (ECF No. 183-1 ("May Decl.")). Officer May also referenced the evidence submitted in support the motion for partial summary judgment filed by Defendants Burdshaw, Gafford, Jones, and Silcox.[3] This evidence includes

---

[3] The claims against Officer May are identical to the claims Plaintiff brings against some of the other Defendants in this case. At the time Defendants Burdshaw, Gafford, Jones, and Silcox filed their motion for partial summary judgment in this case regarding those claims, Officer May had not been served. (*See* ECF Nos. 118, 131.) Officer May then filed a notice adopting the motion for summary judgment previously filed by those other Defendants because the claims are the same as those raised against the other Defendants and because Officer May relies on the same evidence to dispute them. (ECF No. 166.) Because that motion for summary judgment made no mention of Officer May or his involvement in the alleged incident, the Court informed Officer May that he could not adopt that motion for summary judgment. (ECF No. 169.) Officer May then filed the pending motion for summary judgment, which is nearly identical to the motion filed by the other Defendants and which relies on the same evidence used in support of that motion.

declarations from those Defendants, the FDOC report of force form, medical records, incident reports, disciplinary reports, and excerpts from Plaintiff's depositions. (ECF Nos. 118-1–118-12.)[4]

Plaintiff filed his response in opposition to Officer May's motion for partial summary judgment. (ECF No. 209.) Plaintiff included the following exhibits with his response: his affidavit (ECF No. 209-1 at 2–4 ("Pl. Aff.")); Plaintiff's generals affidavit (*Id.* at 5–7 ("Pl. Gen. Affs.")); affidavit of Jason Kroesen (*Id.* at 8); affidavit of David Horne (*Id.* at 9–10 ("Horne Aff.")); affidavit of Robert Granata (*Id.* at 11–12); affidavits of Willie Boddie (*Id.* at 13–15, 20–25 ("Boddie Affs.")); affidavit of Jockue Hillman (*Id.* at 16 ("Hillman Aff.")); discovery requests (*Id.* at 17–18); affidavit of Troy Hall (*Id.* at 19); affidavit of Antonio Maddox (*Id.* at 26–29); Officer May's responses

---

[4] This evidence is referred to as follows throughout this Report and Recommendation: Plaintiff's FDOC information sheet (ECF No. 118-1); declaration of Defendant Silcox (ECF No. 118-2 ("Silcox Decl.")); declaration of Defendant Burdeshaw (ECF No. 118-3 ("Burdeshaw Decl.")); declaration of Defendant Gafford (ECF No. 118-4 ("Gafford Decl.")); declaration of Defendant Jones (ECF No. 118-5 ("Jones Decl.")); FDOC report of force form, medical records, and incident reports (ECF No. 118-6); FDOC disciplinary reports, investigative reports, and witness statements (ECF Nos. 118-7–118-8); excerpts of Plaintiff's July 19, 2016 deposition (ECF No. 118-9 ("Pl. First Depo.")); excerpts of Plaintiff's September 8, 2016 deposition (ECF No. 118-10 ("Pl. Second Depo.")); FDOC health care record (ECF No. 118-11); FDOC special housing record (ECF No. 118-12); and use of force video footage (ECF No. 123).

and objections to discovery requests (*Id.* at 29–38); newspaper articles (*Id.* at 39–40); FDOC optometry and other physical and mental health records (*Id.* at 41–57, 59–65); and FDOC risk assessment for chemical agents (*Id.* at 58).[5]

## II. EVIDENCE

On January 28, 2014, while Plaintiff was incarcerated at NWFRC,[6] Plaintiff was in an altercation with several prison officials, including Officer May. (Compl. at 8.) Plaintiff's version of events—as asserted in the complaint, affidavits, and his depositions—differs from the version provided by Officer May and the other Defendants. Both versions are discussed in turn below with respect to Plaintiff's claims against Officer May only.

_____

[5] In Officer May's reply, he takes issue with some of the attachments Plaintiff provided in support of his response to the motion for partial summary judgment. To start, Officer May argues that the third affidavit by Boddie, ECF No. 209-1 at 23, should be stricken because it is irrelevant to Plaintiff's case. Officer May also argues that the affidavits from Kroesen and Granata, ECF No. 209-1 at 8, 11–12, should be stricken because they are not relevant to this case and because they were signed prior to the date of the allegations. Next Officer May argues that the affidavits of Hall and Maddox, ECF No. 209-1 at 19, 26, should not be considered because their statements are not specific to Plaintiff's allegations. Lastly, Officer May argues that the newspaper articles Plaintiff attached, ECF No. 209-1 at 39–40, should be stricken as immaterial. (ECF No. 213.)

The undersigned agrees and has not considered these exhibits in ruling on the pending motion for partial summary judgment.

[6] Although Plaintiff was incarcerated at NWFRC at the time of the alleged incident, he is currently incarcerated at Tomoka C.I.

According to Plaintiff, Officer May told him to stop yelling and kicking his cell door, although he was not doing either of those. Next, Officer May, along with other Defendants, sprayed Plaintiff with chemical agents for no reason. (Compl. at 8; ECF No. 209 at 1–2, 4–5, 7–8; Pl. Second Depo. at 37–45; Pl. Aff.; Pl. Gen. Affs.; Boddie Affs.; Hillman Aff.)

Plaintiff says that Officer May used excessive force on him again when he punched him and kicked him in the testicles.[7] Plaintiff also says that Officer May threw his food trays inside his cell,[8] made Plaintiff sit in a cold cell without any clothes, and destroyed his property. According to Plaintiff, and allegedly overheard by other inmates, Defendant Silcox told his subordinates to use excessive force on Plaintiff in retaliation so that

---

[7] In Plaintiff's depositions and in his affidavits, he alleges that there was also excessive force used on him on January 23, 2014—specifically he alleges that he was kneed/kicked in the testicles, punched, and choked. (Pl. First Depo. at 72–75; Pl. Second Depo. at 25–28, 129; Pl. Aff.; Pl. Gen. Affs.) In Plaintiff's second deposition and his affidavits, he also mentions a separate assault by Officer May during which Officer May choked Plaintiff and hurt his thumb. (Pl. Second Depo. at 129; Pl. Aff.; Pl. Gen. Affs.)

Notably, in his Complaint Plaintiff only mentions a physical assault that occurred on January 28, 2014. (Compl.) His Complaint states only that "Sgt. Gafford, Office May and Sgt. Jones punch me and kick me in my testicals [sic]. This occurred on 1-28-14." (Compl. at 8, 11.)

[8] Although Plaintiff only alleges in his Complaint that this happened on January 28, 2014, Plaintiff stated in his second deposition that this happened on multiple occasions. He also said that sometimes officers would throw empty trays into his cell. Other times they would not give him any tray at all. Plaintiff, however, could not provide the number of times this happened, only stating that it happened "a lot." (Pl. Second Depo. at 109–11.)

Plaintiff would drop a lawsuit against Defendant Silcox's brother. (Compl. at 8–9; ECF No. 209 at 1–7, 9–10, 12; Pl. First Depo. at 66–67, 72–75, 109–10; Pl. Second Depo. at 25–28, 51–52, 56–57, 117–18, 129; Pl. Aff.; Pl. Gen. Affs.; Boddie Affs.; Hillman Aff.)

Plaintiff also claims that a false disciplinary report was written against him that same day. Plaintiff says that his witnesses were not provided with witness statement forms and that there was not an impartial investigation regarding the disciplinary report. Plaintiff alleges that he was found guilty based solely on an officer's statement and that Officer May prevented him from attending the disciplinary hearing. (Compl. at 9; ECF No. 209 at 1–2, 10–13; Pl. Aff.; Pl. Gen. Affs.; Boddie Sworn Affs.)

Additionally, Plaintiff asserts that he told medical that he was assaulted. Plaintiff says that although he was seen by Nurse Davis, he did not receive any treatment for his injuries. According to Plaintiff, his injuries involve physical and mental pain, including eye pain, worsened asthma, nightmares, and anxiety attacks. Plaintiff also declared a psychological emergency following the incident.  (Compl. at 9; ECF No. 209 at 8–9, 14; Pl. Depo. at 98–100; Pl. Second Depo. at 79–83, 96–107; Pl. Aff.; Pl. Gen. Affs.; )

Officer May, of course, tells a different story. According to Officer May, Plaintiff was being disruptive, cursing at staff members, and kicking his cell door. Officer May attempted to talk to Plaintiff so that he would stop his loud and disruptive behavior. Other officers also tried to talk to him. Because Plaintiff was ignoring orders to stop acting disorderly, Defendant Burdeshaw contacted Nurse Lucas because of Plaintiff's medical condition that could be exacerbated by the use of chemical agents. Nurse Lucas requested to be present during the administration of chemical agents, and the Assistant Warden authorized the use of the chemical agents. (ECF No. 178 at 3; May Decl.; Burdeshaw Decl.; Gafford Decl.; May Decl.)

Although Plaintiff originally stopped his disruptive behavior after receiving a warning, he continued his disruptive conduct about an hour later. After Defendant Burdeshaw warned Plaintiff again to stop and requested Nurse Lucas to be present, Defendant Jones sprayed chemical agents on Plaintiff through his cell door and then again when Plaintiff's disruptive behavior continued. Plaintiff was then restrained, given a shower, and provided with clean boxers. Then, Plaintiff was evaluated by medical staff, and no injuries were noted. (ECF No. 178 at 3; May Decl; Burdeshaw Decl.; Gafford Decl.; Jones Decl.; ECF No. 123.)

As a result of this incident, Officer May issued Plaintiff a disciplinary report for Creating or Participating in a Minor Disturbance. He was found guilty and received thirty days in disciplinary confinement. Plaintiff also received a disciplinary report for Misuse of State Property because he attempted to use his state-issued sheet to block the chemical agents. For this, he received fifteen days in disciplinary confinement. Regarding his disciplinary hearing, Plaintiff waived his right to be present and voluntarily refused to provide a statement. Additionally, the investigating officer attempted to obtain witness statements from those witnesses Plaintiff listed. Plaintiff's property was also taken due to Plaintiff's disciplinary report and psychological emergency, in accordance with FDOC rules. (ECF No. 178 at 3–4; ECF No. 134 at 2–3; May Decl.; Gafford Decl.; Jones Decl.; ECF No. 118-7; ECF No. 118-8; Pl. Second Depo. at 131–37.)

## III.  SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and

admissions on file, together with any affidavits and other evidence in the

record "in the light most favorable to the nonmoving party." *Samples on*

*Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact. If the movant is successful on this

score, the burden of production shifts to the non-moving party who must

then come forward with "sufficient evidence of every element that he or she

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must

use affidavits, depositions, answers to interrogatories, or other admissible

evidence to demonstrate that a material fact issue remains to be tried. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v.*

*Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish
> between evidence of disputed facts and disputed matters of
> professional judgment. In respect to the latter, our inferences
> must accord deference to the views of prison authorities.
> Unless a prisoner can point to sufficient evidence regarding
> such issues of judgment to allow him to prevail on the merits,
> he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based

on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The Court must view the evidence and inferences drawn from the underlying facts in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (stating that to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff"). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

# IV.  DISCUSSION

Plaintiff alleges that Officer May violated his First, Eighth, and Fourteenth Amendment rights when he physically assaulted Plaintiff and was involved in the use of chemical agents on Plaintiff on January 28, 2014, in retaliation for a lawsuit Plaintiff brought against Defendant Silcox's brother, and then filed a false disciplinary report against Plaintiff. (Compl.) Plaintiff also raises claims regarding his prison conditions, including exposure to cold temperatures, destruction of property, and issues regarding delivery of food. (*Id.*)

Officer May, however, argues that he is entitled to summary judgment on all of Plaintiff's claims against Officer May except for Plaintiff's claims regarding physical assault and the use of chemical agents on Plaintiff. (ECF No. 178.) Officer May further argues that because Plaintiff has failed to prove that he suffered more than *de minimis* injuries as a result of Officer May's conduct, Plaintiff is only entitled to a claim for nominal damages. (*Id.*)

**A.   Officer May is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff has no evidence of a causal connection between a retaliatory motive and Officer May's conduct.**

Officer May argues that he is entitled to summary judgment regarding

Plaintiff's claims that Officer May acted in retaliation for the lawsuit Plaintiff filed against Defendant Silcox's brother because Plaintiff has not submitted any evidence of a causal connection between his lawsuit and Officer May's actions. (ECF No. 178 at 4–6.) Because Plaintiff has offered only conclusory allegations in support of this claim and because the evidence in the record contradicts the allegation that Defendant Silcox advised the other officers to use excessive force on Plaintiff due to this lawsuit against his brother, Officer May is entitled to summary judgment on Plaintiff's retaliation claim.

The Eleventh Circuit has established a three-part test to determine whether a Plaintiff has an actionable First Amendment claim.  The Plaintiff must establish each of the three elements:

> (1) his speech was constitutionally protected;
>
> (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and
>
> (3) there is a causal relationship between the retaliatory action and the protected speech.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); *see also Smith v. Mosley,*  532 F.3d 1270, 1276 (11th Cir. 2008).

For the first element, it "is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Mosley,* 532 F.3d at 1276. "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints." *Id*.

The second element of the three-part test does not require that the Plaintiff himself was actually deterred from engaging in such speech, but that "a person of ordinary firmness" would be deterred from engaging in the protected speech. *Id.* To demonstrate whether the conduct would have deterred a person of ordinary firmness, Plaintiff must show more than a "de minimis inconvenience" to the exercise of his First Amendment rights. *Bennett*, 423 F.3d at 1252.

Finally, the third element asks whether the alleged retaliatory conduct would not have occurred but for the alleged retaliatory motive. *Hartman v. Moore*, 547 U.S. 250, 260 (2006). Conclusory allegations of retaliation are insufficient. *See Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) ("Appellant also produced nothing, beyond his own conclusory allegations,

suggesting that [the defendant's] actions . . . were motivated by a retaliatory animus. In the absence of such evidence, summary judgment was appropriate."). Accordingly, summary judgment is appropriate when there is no evidence of a causal connection between the allegedly retaliatory motive and the allegedly unconstitutional conduct. *Harris*, 65 F.3d at 918.

A plaintiff bears the burden of proof on all three elements, and Plaintiff has failed to do so here. Applying this three-part *Bennett* test to Plaintiff's claims, the Court concludes that Plaintiff cannot establish a causal connection between any allegedly retaliatory motive and Officer May's conduct regarding the use of excessive force.

Although Plaintiff alleges that Officer May retaliated against him by using excessive force because of a lawsuit Plaintiff filed against Defendant Silcox's brother, Plaintiff has offered nothing other than conclusory allegations of retaliation to support this claim. Specifically, Plaintiff alleges that he and other inmates heard that "Colonel Silcox told his subordinates to use excessive force on me on 1-28-14 to drop a lawsuit I have on his brother." (Compl. at 9; Pl. Aff.; Pl. Gen. Affs.) But Plaintiff's only evidence in support of this allegation is an affidavit of Willie Boddie in which Boddie

says Plaintiff "was intentionally . . . gassed . . . out of retaliation for filing a

civil 1983 right complaint against officers," without any mention of

Defendant Silcox or his brother or any explanation as to how Boddie knew

Defendants were acting in retaliation. (Boddie Affs.) Further, although

Plaintiff alleges in his depositions that Defendant Silcox talked to Plaintiff

about the lawsuit, Plaintiff fails to provide any actual evidence that Officer

May knew about the lawsuit and thus acted in retaliation.[9] (*See* Pl. First

Depo. at 66–70; Pl. Second Depo. at 50–51.)

Officer May, on the other hand, provided unrefuted evidence to the

contrary. The officers in the sworn declarations state that neither Officer

May nor any of the officers involved in the incident knew about the lawsuit

Plaintiff allegedly filed against Defendant Silcox's brother. (May Decl.;

Silcox Decl.; Burdeshaw Decl.; Gafford Decl.; Jones Decl.)

Thus, even if Defendant Silcox knew about the lawsuit against his

brother, as Plaintiff alleges, there is no evidence that Officer May knew

about it aside from assumptions and conclusory allegations. Conclusory

---

[9] Specifically, in Plaintiff's first deposition, he stated that Defendant Silcox mentioned the lawsuit and then stated "but if he knows about it, he's gonna put the other ones on notice that this inmate here is filing lawsuit. They didn't mention it to me or anything like that but..." (Pl. First Depo. at 66–67.) Thus, it is clear that Plaintiff is merely speculating as to whether Officer May knew about this lawsuit and acted in retaliation.

allegations are insufficient to support a motion for summary judgment.

Therefore, the Court concludes that Plaintiff has failed to establish the

causal connection between the allegedly retaliatory motive and the conduct

of Officer May, thus, entitling Officer May to summary judgment on

Plaintiff's retaliation claim. *See Harris*, 65 F.3d at 916–18.

**B.    Officer May is entitled to summary judgment on Plaintiff's property deprivation allegations because there are adequate state remedies to address such claims.**

Officer May also asserts that he is entitled to summary judgment

regarding Plaintiff's allegations that Officer May threw away or destroyed

his property because even if such conduct occurred it does not rise to the

level of a constitutional violation. (ECF No. 178 at 6–7.) Because Plaintiff

has no due process claim where adequate state remedies exist to address

Plaintiff's deprivation of property, Officer May is entitled to summary

judgment on this claim.

The Supreme Court has held that even "an unauthorized intentional

deprivation of property by a state employee does not constitute a violation

of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful postdeprivation remedy for the loss

is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). It follows that

any negligent deprivation of property would also not rise to the level of a

constitutional violation under § 1983. *Daniels v. Williams*, 474 U.S. 327,

330, 333 (1986). Even if Plaintiff's allegation is true regarding Officer May

throwing away or destroying his property—although Plaintiff offers no

evidence to support his claim—Plaintiff's claim does not rise to the level of

a constitutional claim because there are available state postdeprivation

remedies.

Prisoners in Florida have available state postdeprivation remedies for

deprivation of property. First, the FDOC has an inmate grievance

procedure for challenging a deprivation of property, and second under

Florida State § 768.28,[10] there is a state tort remedy for deprivation of

property. *See Logan v. Neel*, No. 3:11-cv-646-J-12TEM, 2011 WL

2784577, at *3 (M.D. Fla. July 14, 2011) ("The State of Florida has

provided an adequate post-deprivation remedy for the seizure of Plaintiff's

property; thus, there is no constitutional violation." (citing *Case v. Eslinger*,

555 F.3d 1317, 1331 (11th Cir. 2009)).

Because any alleged deprivation of property would have been

---

[10] This statute allows prisoners to bring a tort claim in state court to receive damages for the loss of property. *See Everidge v. Cannon*, No. 3:10cv466/MCR/CJK, 2011 WL 5836029, at *2 (N.D. Fla. Nov. 1, 2011).

unauthorized, even if intentionally done by Officer May, and because

postdeprivation remedies exist, Plaintiff has failed to establish a

constitutional violation. Accordingly, Officer May is entitled to summary

judgment on Plaintiff's claims for deprivation of property.

**C.    Officer May is entitled to summary judgment regarding Plaintiff's allegations that Officer May threw his food trays into his cell because Plaintiff has failed to prove that this conduct or any alleged deprivation of food was sufficiently serious to violate the Eighth Amendment.**

Officer May next argues that he is entitled to summary judgment with

regard to Plaintiff's allegations that Officer May threw his food trays into his

cell on January 28, 2014, because—regardless of whether Officer May

threw trays into Plaintiff's cell with food on them or deprived Plaintiff of

food—Plaintiff cannot prove that such conduct rises to the level of an

Eighth Amendment violation. (ECF No. 178 at 7–14).

Plaintiff's allegations regarding his food changed throughout the

course of this case. In his Complaint, Plaintiff alleges only that Officer May

threw trays with food on them into Plaintiff's cell on January 28, 2014.

(Compl. at 8, 12.) During his depositions, however, Plaintiff testified that

sometimes his food would land on the floor, sometimes the trays were

empty, and sometimes he did not receive any food at all. (Pl. First Depo. at

75; Pl. Second Depo. at 108–11.) Plaintiff did not recall the number of times this happened, and he conceded that sometimes he received food in the normal way. (Pl. Second Depo. at 108–11.) To support his claim that he was denied food, Plaintiff says that he lost weight as a result, although he could not say how much.[11] (Pl. Second Depo. at 111, 114.)

Plaintiff's allegations represent a challenge to his prison conditions. Notably, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Prison conditions only violate the Eighth Amendment when they "involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the severity of the crime warranting imprisonment." *Id.* at 347. The Supreme Court has established a two-prong test of determining whether prison conditions violate the Eighth Amendment. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).

First, the prisoner must show that the prison condition is so serious that it violates the Eighth Amendment—it must be "extreme." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). The condition must "pose an

---

[11] Plaintiff also included the affidavit of Hillman. This affidavit, however, merely stated that Hillman heard empty trays being throw into Plaintiff's cell. It does not state how Hillman knew the trays were empty or how often this happened. (*See* Hillman Aff.)

unreasonable risk of serious damage to [the prisoner's] future health [or

safety]." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 35 (1993)). In

*Helling*, the Supreme Court stated that

> the Eighth Amendment requires more than a scientific and
> statistically inquiry into the seriousness of the potential harm
> and the likelihood that such injury to health will actually be
> caused by exposure to [the condition]. It also requires a court to
> assess whether society considers the risk that the prisoner
> complains of to be so grave that it violates contemporary
> standards of decency to expose *anyone* unwillingly to such a
> risk. In other words, the prisoner must show that the risk of
> which he complains is not one that today's society chooses to
> tolerate.

509 U.S. at 36. Thus, the Eighth Amendment protects prisoners from being

"deprive[d] . . . of the minimal civilized measure of life's necessities."

*Chandler*, 379 F.3d at 1289 (quoting *Rhodes*, 452 U.S. at 347).

Second, the prison officials must have "acted with a sufficiently

culpable state of mind" regarding the challenged condition; in other words,

they must have acted with deliberate indifference. *Id.* (quoting *Hudson*, 503

U.S. at 8 (quotation marks and citation omitted)). The prison official must

"know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff has failed to establish that Officer May violated the Eighth Amendment under the first *Chandler* prong with regard to Plaintiff's food delivery, or alleged food deprivation. "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. However, "a prisoner only is entitled to reasonably adequate food." *Hernandez v. Fla. Dep't of Corr.*, 381 F. App'x 862, 865 (11th Cir. 2008).

While prisoners must receive adequate food, the "[w]ithholding of food does not *per se* constitute an objectively serious deprivation in violation of the Constitution." *Adair v. Okaloosa Cty. Jail*, No. 3:07cv425/MCR/EMT, 2008 WL 564616, at *2 (N.D. Fla. Feb. 27, 2008) (citing *Reed v. McBride*, 178 F,3d 849m 853 (7th Cir. 1999)). Receiving "a minimal amount of food for a limited number of days" is not an Eighth Amendment violation. *Hernandez*, 281 F. App'x at 865. Both the severity and duration of the deprivation are important considerations in determining whether an Eighth Amendment violation has occurred. *Adair*, 2008 WL 564616, at *2. A court may also consider the adverse physical effects suffered by the prisoner. *Id.* at *3.

Plaintiff alleges in his Complaint that food trays with food on them

were thrown into his cell, not that he was deprived of food. (Compl. at 8, 12; Pl. First Depo. at 75–76.) He also states that this happened only on January 28, 2014, not that this happened any other time. (Compl. at 8, 12.) If this allegation were true the fact that Officer May, on one occasion, delivered Plaintiff his food in a way that was displeasing to him does not rise to the level of an Eighth Amendment violation.

Alternatively, even assuming there were occasions in which Officer May deprived Plaintiff of food, Plaintiff has still failed to establish that his Eighth Amendment rights were violated. To start, Plaintiff could not provide any details about the number of times he was denied food. (Pl. Second Depo. at 108–11.)  He also acknowledged that Officer May did not work every day, did not serve all of Plaintiff's meals when he did work, and would sometimes provide Plaintiff his food in a normal manner. (*Id.*)

Notably, the evidence contradicts Plaintiff's allegations that he was deprived of food. Officer May understandably denies that he ever threw food into Plaintiff's cell or denied him food. (May Decl. at 2) The records support this view and show that Plaintiff received all of his meals on January 28, 2014. (ECF No. 118-12.)  Additionally, aside from two meals Plaintiff refused the following day, the records show that Plaintiff received

all the meals provided for him while he was incarcerated at NWFRC. (*Id.*)

Further, Plaintiff failed to prove that he suffered any physical harm as a result of his alleged deprivation. Although Plaintiff stated in his deposition that he lost weight, the available prison records evidence that no such weight loss occurred. (*Id.*) Instead, the records show that Plaintiff's weight fluctuated but not seriously.[12]  (*Id.*) Accordingly, Plaintiff has failed to establish that he suffered from any "deprivation that posed an unreasonable risk of serious damage to his health." *Hernandez*, 281 F. App'x at 866.

Because Plaintiff has failed to prove that there was a sufficiently serious deprivation of food so as to rise to the level of an Eighth Amendment violation, Officer May is entitled to summary judgment with regard to this claim.

---

[12] The records are from the time frame from September 30, 2013, to April 4, 2014. Plaintiff's weight fluctuated between approximately 160 to 170 pounds. There are, however, entries that state that Plaintiff weighed around 120 pounds. Based on a review of the records in their entirety, it makes sense that these entries must have been made in error because the entries immediately surrounding them note that Plaintiff's weight was around 160 pounds. (ECF No. 118-12.) It is impossible for an individual to have a forty pound weight loss in such a short period of time and then days later miraculously regain the forty pounds.

**D.    Officer May is entitled to summary judgment on Plaintiff's claim regarding his exposure to cold temperatures because Plaintiff has failed to prove that the prison condition was sufficiently serious to violate the Eighth Amendment.**

Officer May next argues that he is entitled to summary judgment with regard to Plaintiff's allegations that Plaintiff was subjected to unconstitutionally cold conditions because Plaintiff has offered nothing to show that subjection to any such condition rises to the level of a constitutional violation. (ECF No. 178 at 14–18). Because Plaintiff has failed to prove that any exposure to cold temperatures was sufficiently serious to constitute an Eighth Amendment violation, Officer May is entitled to summary judgment on this claim.

As with Plaintiff's other allegations, his story regarding exposure to cold temperatures changed throughout the case. First, Plaintiff alleged that on January 28, 2014, Officer May took Plaintiff's clothes and made him sit in his cell without clothes or heat when the weather was 20 degrees outside. (Compl. at 8–9.) Later at his deposition, Plaintiff then changed his story and alleged that he was wearing a privacy shroud and boxers because his other clothes and blanket were removed after the use of

chemical agents and after Plaintiff declared a psychological emergency.[13] (Pl. Second Depo. at 114–21.) Plaintiff, however, fails to state how long he was without additional clothing or provide any evidence of the actual temperature outside.[14] (Pl. Second Depo. at 120–21.) Notably, Plaintiff also does not allege any injuries resulting from his exposure to the cold temperatures. (*See* Compl.)

Using the two-prong *Chandler* test discussed above, Plaintiff again fails to satisfy the first prong of alleging a condition that was sufficiently extreme to rise to the level of an Eighth Amendment violation. *See Chandler*, 379 F.3d at 1289. While it is true "that the right of a prisoner not to be confined in a cell at so low a temperature as to cause severe discomfort . . . was well established," *Chandler v. Baird*, 926 F.2d 1057, 1065–66 (11th Cir. 1991), Plaintiff has failed to allege facts sufficient to show that he was exposed to such low temperatures so as to cause severe discomfort. Even assuming it was 20 degrees outside, Plaintiff has failed to prove that inside of his cell he was without heat for any period of time.

---

[13] Plaintiff's blanket was removed because he was charged in a disciplinary report with misuse of state property. Additionally, Plaintiff did not have clothes because he declared a psychological emergency. (Pl. Second Depo. at 114–21.)

[14] The only evidence Plaintiff proffers in support of an extremely cold temperature is a hearsay statement from an unnamed officer who passed by Plaintiff's cell and said it was 20 degrees outside. (*See* Pl. Second Depo. at 118–19.) This, however, is not appropriate evidence for a motion for summary judgment.

Because Plaintiff has not provided evidence that he was actually exposed to 20 degree temperatures without clothing or blankets in his cell and because Plaintiff has failed to allege that he suffered any actual consequences as a result of any such exposure that would reflect severe discomfort, Plaintiff has failed to prove an Eighth Amendment violation.

Again, "the Constitution does not mandate comfortable prisons." *Rhodes*, 425 U.S. at 349. Because Plaintiff has failed to prove a sufficiently extreme prison condition that was dangerous to his health, Officer May is entitled to summary judgment on this claim.

**E.    Officer May is entitled to summary judgment regarding Plaintiff's due process claims surrounding his allegedly false disciplinary report because Plaintiff, a life-sentenced inmate, had no liberty interest requiring due process protections.**

Officer May also argues that he is entitled to summary judgment regarding Plaintiff's allegations that his due process rights were violated when he was issued and found guilty of a false disciplinary report. (ECF No. 178 at 19–22.) Specifically, he argues that Plaintiff lacks the requisite liberty interest to invoke due process protections since he is a life-sentenced inmate who received a total of only forty-five days in disciplinary confinement as a result of his infractions. (*Id.* at 19.) Because the limited due process requirements afforded to some prisoners do not apply to

Plaintiff as a life-sentenced inmate who did not lose gain time and was not subjected to atypical confinement, Officer May is entitled to summary judgment on this claim.

Plaintiff alleges that Officer May issued him a false disciplinary report on January 28, 2014. (Compl. at 9.) He also says that there was not a proper investigation following the issuance of this disciplinary report and that he was found guilty based solely on an officer's statement. (*Id.*) Further, Plaintiff alleges that Officer May prevented him from attending his hearing. (*Id.*) Plaintiff concludes that these actions violated his Fourteenth Amendment rights. (*Id.* at 11–12.)

In the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citation omitted). For prisoners, due process is required for a liberty deprivation (1) "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court," and (2) "when the state has consistently bestowed a certain benefit to prisoners . . . and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life.'" *Kirby v. Siegelman*, 195 F.3d 1285,
1290–91 (11th Cir. 1999) (citation omitted).

While prisoners do have due process rights in disciplinary hearings,
*see Wolff v. McDonnell*, 418 U.S. 539, 560–65 (1974), the prisoner must
have a liberty interest. "Without either the loss of gain-time credits or
'atypical' confinement, the Due Process Clause itself affords no protected
liberty interest that invokes procedural protections." *Walker v. Fla. Dep't of
Corr.*, No. 5:15cv25/MW/EMT, 2016 WL 1426011, at *3 (N.D. Fla. Mar. 18,
2016) (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)).

Plaintiff—a life-sentenced inmate who received forty-five days in
disciplinary confinement—has no such liberty interest. Plaintiff is ineligible
for gain time because he is a life-sentenced inmate. *See Walker*, 2016 WL
1426011, at *2 (noting that prisoners serving life sentences are ineligible to
earn gain time).

Plaintiff also fails to allege that his conditions in disciplinary
confinement were significantly more restrictive than elsewhere in the prison
or that disciplinary confinement was an "atypical or significant hardship."
*See O'Bryant v. Wilson*, No. 1:10cv76-MP-G, 2012 WL 3264187, at *3
(N.D. Fla. Aug. 10, 2012) (finding that a life-sentenced inmate did not have
a liberty interest at stake regarding his disciplinary confinement and stating

that "[c]ourts have routinely held that prisoners have no liberty interest in remaining in general population versus more restrictive confinement" (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983))); *Sandin*, 515 U.S. at 486 (finding that 30 days of "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State may conceivably create a liberty interest").

Because Plaintiff was not deprived of a liberty interest when he received forty-five days of disciplinary confinement without losing any gain time, there is no need to address whether he received adequate process surrounding his disciplinary hearing. Accordingly, Officer May is entitled to summary judgment regarding Plaintiff's due process claim.

## F.    Because Plaintiff failed to prove that he suffered more than *de minimis* injuries as a result of Officer May's conduct, Plaintiff is not entitled to claims of compensatory or punitive damages.

Officer May then argues that Plaintiff is not entitled to compensatory or punitive damages because he has failed to demonstrate the requisite injury under 42 U.S.C. § 1997e(e). (ECF No. 178 at 22–31.) Because Plaintiff failed to provide evidence that he suffered more than *de minimis* injury from Officer May's conduct, as required by the Eleventh Circuit, Plaintiff may not pursue his claims for compensatory or punitive damages against Officer May.

The Prison Litigation Reform Act ("PLRA") provides limitations on the recovery of compensatory and punitive damages when a prisoner has not shown that he suffered more than a *de minimis* physical injury. Under the PLRA, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). According to the Eleventh Circuit, the PLRA precludes claims for punitive and compensatory damages absent a showing of physical injury. *Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011) (citing *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007)). Because Plaintiff seeks both compensatory and punitive damages, the relevant inquiry is whether Plaintiff has shown a physical injury.

The Court concludes that Plaintiff has failed to show the requisite physical injury to support a claim for punitive or compensatory damages. "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." *Mann v. McNeil*, 360 F. App'x 31, 31 (11th Cir. 2010) (quoting *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312–13 (11th Cir. 2002)). Although the injuries must be greater than *de minimis*, the physical injuries need not be significant. *Dixon*

*v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007); *Harris v. Garner*, 190

F.3d 1279, 1286 (11th Cir. 1999), *op. reinstated in part on rehearing*, 216

F.3d 970 (2000).

According to Plaintiff's Complaint, he still suffers from physical and

mental pain as a result of Officer May's use of excessive force. (Compl. at

10.) With regard to Plaintiff's physical injuries, he states that his eyes still

hurt and that his asthma has gotten worse. (*Id.*) Notably, Plaintiff does not

complain of any additional physical injuries or state that he received any

treatment for these injuries in his Complaint. Then, in his response to

Officer May's motion for partial summary judgment, Plaintiff states that his

thumb was swollen and his other fingers hurt, he was on breathing

treatments for his asthma, he had chest pain, and he had to get new

glasses as a result. (ECF No. 209 at 8–9.)

With regard to Plaintiff's alleged injuries as a result of the use of

chemical agents, Plaintiff has failed to prove that his physical injuries were

more than *de minimis*. Plaintiff was evaluated following his

decontamination shower, and the nurse noted that there were no injuries

beyond what was normal for the effects of chemical agents and his lungs

sounded clear. (ECF No. 118-6.) Additionally, the use of force video does

not show Plaintiff in any distress following the use of chemical agents;

instead, it only shows Plaintiff coughing occasionally. (ECF No. 123.)

Plaintiff's conclusory allegations that he continues to suffer from the effects of the chemical agents are insufficient to establish that his injuries resulting from the use of chemical agents were more than *de minimis*. While he states that his eyes are still hurting and that both his vision and asthma have gotten worse, Plaintiff has provided no evidence to show a causal connection between his asthma and worsening eye sight and the use of chemical agents.

With regard to Plaintiff's asthma, this condition preceded the use of chemical agents, and the fact that Plaintiff provides medical records suggesting that he underwent breathing treatments months later does not show that the chemical agents caused Plaintiff's breathing issues. (ECF No. 209-1 at 41–65.)

The same is true regarding Plaintiff's vision. Although in Plaintiff's Complaint he alleges that his eyes are still hurting him, Plaintiff provided no medical records regarding eye pain. Then, in his response to Officer May's motion for summary judgment, he complains of worsening vision and includes medical records regarding his vision but again fails to connect his worsening vision to the use of chemical agents. (ECF No. 209-1 at 42–43.) Thus, while Plaintiff may be able to prove that his eyesight has

deteriorated, Plaintiff has failed to prove that any deterioration in his eyesight was connected to or the result of the use of chemical agents.[15]

The fact that Plaintiff suffered the effects of chemical agents does not necessarily mean that his injuries were more than *de minimis*, particularly where Plaintiff failed to prove that he had any lasting injuries as a result of the chemical agents.[16] *See, e.g.*, *Robinson v. Tifft*, No. 3:11cv560/LAC/CJK, 2012 WL 2675467 (N.D. Fla. June 1, 2012) (burning eyes and temporary blindness from chemical agents did not constitute more than *de minimis* injury); *Kornagay v. Burt*, No. 3:09cv281/LAC/EMT, 2011 WL 839496 (N.D. Fla. Feb. 8, 2011) (burning skin, choking, and difficulty breathing not more than *de minimis* injury).

Because the medical records at the time of the incident fail to show that Plaintiff suffered anything more than *de minimis* injury as a result of the use of chemical agents, Plaintiff's conclusory allegations to the contrary are insufficient. *See Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th

---

[15] Plaintiff also mentions in an inmate sick-call request 11 months after the alleged incident that his eyes hurt, but he says this is a result of allergies, not chemical agents. (ECF No. 209-1 at 49.)

[16] In Plaintiff's second deposition, he stated that his skin was burning for about two hours and that he had difficulty breathing for 20–30 minutes. His injuries were typical of those resulting from the use of chemical agents. He also stated, however, that he was still feeling the effects of the chemical agents. (Pl. Second Depo. at 96–97, 106.) Yet his medical records do not show any consistent complaints regarding his alleged injuries during his visits with medical or mental health following the incident.

Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)). Thus, Plaintiff has failed to establish that he suffered sufficient physical injury to entitle him to recovery of compensatory and punitive damages regarding the use of chemical agents.

Plaintiff has also failed to prove that he suffered more than *de minimis* injuries resulting from Officer May's alleged physical assault. In Plaintiff's Complaint, although he states that Officer May punched him and kicked him in the testicles, he does not allege that he suffered any physical injuries as a result of this conduct. (*See* Compl. at 8.) It was not until Plaintiff's second deposition that he first mentioned that his testicles were swollen and that he is still suffering from this alleged assault. (Pl. Second Depo. at 104–05.)  Then, in his response to Officer May's motion for partial summary judgment, he says that as a result of the alleged physical assault by Officer May, his thumb was swollen and his other finger hurts. (*See* ECF No. 209 at 9.)

Notably, Plaintiff's medical records do not support Plaintiff's allegations of physical injuries from any physical assault. Plaintiff's medical records reveal that on January 23, 2014, Plaintiff was assessed by medical

and no injuries were noted. (ECF No. 209-1 at 45.) Then on January 28,

2014, he was assessed again, and although there was mild swelling to the

right thumb, he had a free range of motion and no deformity. (*Id.* at 43, 56.)

No other injuries were noted and no treatment was necessary. (*Id.* at 43,

56.)[17]  Thus, the uncontroverted evidence demonstrates that immediately

following the alleged physical assaults Plaintiff's only injury was slight

swelling to the thumb that required no medical treatment, a complaint

which does not constitute more than *de minimis* injury. *See Tate v.*

*Rockford*, 497 F. App'x 921, 925 (11th Cir. 2012) (finding that "a laceration

on [the] forehead, several small abrasions and cuts, and swollen right

were" were *de minimis*); *Parker v. Dubose*, No. 3:12cv204/MCR/CJK, 2013

WL 4735173, at *2 (N.D. Fla. Sept. 3, 2013) (citing *Luong v. Hatt*, 979 F.

Supp. 481, 485 (N.D. Tex. 1997), for the proposition that a swollen wrist

lasting two days and slight swelling of the jaw, in conjunction with

scratches, abrasions, a bloody nose, and a briefly injured shoulder, were

*de minimis* injuries).

  Plaintiff's medical records also evidence that Plaintiff did not

---

[17] Plaintiff mentions his thumb in an inmate sick-call request, but this sick-call request was not made until 10 months after the alleged incident. (ECF No. 209-1 at 48.) He also says in a sick-call request in November 2016 that his fingers are numb and have been for a year. (*Id.* at 50.) However, based on that time-frame, his finger problems would have started in November 2015, almost two years after the alleged incident.

complain of testicle pain until he visited medical in May 2014, and at that

time he said that staff grabbed Plaintiff in the testicles, which Plaintiff does

not allege in his Complaint. (ECF No. 118-11.) Further, Plaintiff's medical

records note that Plaintiff's testicles were not swollen. (*Id.*) Thus, Plaintiff

failed to establish that he suffered any physical injury as a result of the

alleged assault and failed to produce any evidence that he complained to

medical about any pain in his testicles associated with conduct by Officer

May as alleged in his Complaint.[18]

In short, because Plaintiff's injuries consist of those that are common

effects from the use of chemical agents and slight swelling in the thumb

that did not inhibit his range of motion or require any treatment, Plaintiff's

injuries fail to constitute more than *de minimis* injuries under the PLRA.

Plaintiff, therefore, is precluded under the PLRA from bringing claims for

punitive and compensatory damages against Officer May. Plaintiff, of

course, may proceed on his claim for nominal damages if he is able to

establish that his constitutional rights were violated with respect to the

claims not addressed in Officer May's motion for partial summary

---

[18] His sick-call request in November 2016 also includes complaints of testicle pain that has been going on for a year. (*Id.* at 50.) Again, however, based on that time-frame, this pain would have started in November 2015, almost two years after the alleged incident.

judgment.

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant May's Motion for Partial Summary Judgment, ECF No. 178, should be **GRANTED.**[19]

**IN CHAMBERS** this 19th day of January 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

---

[19] The only remaining claims against Officer May are Plaintiff's claims regarding the use of chemical agents and physical assault—which Officer May did not address in his motion for partial summary judgment. Further, Plaintiff should not be permitted to recover compensatory and punitive damages but should be limited to recovery of nominal damages if he succeeds on any of his remaining claims that his constitutional rights were violated.